Our second case today is number 24, 1877, Lisa Smith v. Matthew Jennings. Ms. Royer? Yes, Your Honor. Good to have you here, Ms. Royer. Thank you, Your Honor. May it please the Court, I'm Jennifer Royer, and I'm pleased to appear here today on behalf of Officer Matthew Jennings, who is present with me in the courtroom. We have three issues on appeal today. With respect to the first issue, the district court misapplied the summary judgment standard in failing to disregard testimony that was blatantly contradicted by the record, and in finding that minor discrepancies in testimony created a dispute of material facts. This is an interlocutory appeal. Yes, it is. Denial of a claim for qualified immunity? Yes, yes it is. Yes, it is, Your Honor. And in particular, when we look at some of the issues in the case, one of the issues that we found was that to the extent that the court found that there were any kind of disputes of material fact, there were two, three areas in which the court found disputes of material fact. One related to Smith's movements on the screened-in porch. Well, the stories were directly contrary to one another. They were not, actually, Judge, and that's the point. They weren't? They were not. Okay. And I'd be happy to explain how. Well, the judge thought they were directly contrary to one another. And I think that's one of the issues that we have on appeal. Judge Urbanski. Judge Urbanski, and he's a great judge. And for that reason, he said you needed a trial. That's right. And for that reason, he said you deny a qualified immunity claim. That's correct. And so, Judge, but. . . That's the whole case. Well. . . And the Supreme Court gives you right under missile versus foresight all the way back to appeal that denial. That's correct, Judge. And so, the ability for us to appeal that denial actually comes because we are appealing a denial on the basis of an area of law. We're not asking the court to weigh the facts. We're not asking the court to determine who was correct and who wasn't correct. With respect to the court's finding that there are material facts in dispute, however, there is both the United States Supreme Court case law and Fourth Circuit case law that deal with areas where the testimony is blatantly contradicted by the record, the physical and photographic evidence in the scene. But we're not. . . I mean, it's not just that we don't weigh the facts. Nobody weighs the facts of summary judgment anyway. Right. Our cases say we have to take the facts as the district court stated them. Correct. Which means when the district court looked at the record and said, I think there's evidence to support this fact and that fact and that. . . Whatever a jury may find one way or the other. But there's sufficient evidence for all of these facts, and the district court lays those out. And then we accept those, and you have to accept those. And then we construe them in the light most favorable to the plaintiff and ask, would this be a constitutional violation and was it clearly established? Correct. So is that what you're doing on appeal? Yes. There is an entire area in terms of we're alleging that there was a denial of qualified immunity that was an error as a matter of law. But in terms of those fact issues, Your Honor, I think the point that I'm trying to make is if you take the entire body of facts that were stated in front of the court, and we accept that those are the body of facts, I think that there was error by the district court in not disregarding facts that were blatantly contradicted by the evidence in the scene. We don't have an interlocutory review to review the district court's assessment of the facts. Well, if it comes to a point of law, and that's the point that I'm trying to make. Well, I guess that's my question is just understanding the scope of what you're arguing. Do you contend that Jennings did not violate Smith's clearly established Fourth Amendment rights if he shot him and Smith was not in a shooting stance, was not advancing, was not making tactical maneuvers, was not directing a gun or a flashlight at Jennings, and the flashlight wasn't strobing? Accepting all those facts, do you say shooting him in that circumstance was not a violation of clearly established law? Your Honor, I do not... Sorry, is it yes or no? Under those circumstances, that would be a violation of clearly established law. So that's the only question in front of us. That's the only thing you have, we have jurisdiction to decide because those are the facts as the district court presented them. The district court said a jury could believe all those facts I just read, and the only thing we're allowed to decide is would that be a violation of clearly established law? If you're not challenging that right now, you can challenge later once the facts are sorted out, you can come back on what the facts actually were. But except all of those are the facts, I just read them from the district court's opinion. And if you're not saying the district court erred as a matter of law on all those facts, then we have no jurisdiction. So I understand what the court is saying, and I guess in terms of clarification, what I'm arguing is that the court made an error in determining that it could review certain facts. And that's the point of a law that we're talking about in terms of disregarding... So for example, and I'll give you an example from the facts, and if the court does not want to hear that, that I understand. Well, my colleagues may want to hear all sorts of things. I just wanted to ask about that so I understand the scope of your claim. When I was looking at your argument about the clearly established law, it did look like it depended on taking the facts as you viewed them rather than as the district court viewed them. But if you thought that even in all these circumstances, it wouldn't have been a violation of clearly established law to shoot him, then that's a different argument. But you seem to agree that based on the case law, that's an argument that can't be made. Well, I would agree that if an individual is standing on his porch doing nothing, then no, an officer can't shoot him. I think that's black letter law. I wouldn't be here to make that argument. But the argument I'm making is a little more nuanced in that... So we have Scott v. Harris out of the Supreme Court, which states that the district court is not to give credit...  I'm sorry, Your Honor? Saussure? Scott v. Harris. So that's the case in which the court found that if the record as presented, the photographic evidence, the video cameras, all of that evidence blatantly contradicts testimony provided by a witness, then the court is to not give credit to the testimony for the purpose of summary judgment. And that is one of the issues that we raised. We had a situation in which there was testimony provided by the neighbors, which stated that, for example, there was no movement on the porch by Mr. Smith. He stepped outside and stood exactly where he was. But we have a photograph of the body indicating that he was laid flat on the ground and he's six feet tall and his head is several feet from the door. So the evidence on the scene, the physical body on the scene, disputes Mr. Huff's testimony that there was no movement by Mr. Smith on the porch. And so when I'm looking at it, I'm looking at it in terms of the misapplication of the summary judgment standard in terms of what Scott v. Harris says the district court has to do in terms of disregarding evidence that's blatantly contradicted by the record. The second point on that same misapplication of the summary judgment standard relates to differences in the Anderson v. Russell case, where the court indicates that the district court cannot create a triable issue of fact where a witness testimony differs from a police officer's when the witness has a disadvantaged viewpoint. And so our argument with respect to these facts that the judge found to be in dispute were that if the judge had properly applied Scott v. Harris or had applied Anderson v. Russell, then those facts would not be in this discussion at all. And then when you're left with the remaining facts, then as a matter of law, yes, Mr. Jennings is entitled to summary judgment. So you're saying the court was wrong to find a dispute of material fact on those? Because the court didn't apply Scott v. Harris and Anderson v. Russell. And I'll let thisóI will stop harping on this and let you talk about other things. But don't we have cases saying on interlocutory review, we can't review whether the district court was mistaken that there was a dispute of material fact? Otherwise, we could review every single denial of summary judgment. Absolutely. But you also have cases where on summary judgment the court looks at whether or notó You want us to review the facts, so what standard of review do we have? You claim we have a right or power to review the facts for recitation. So onó Under what standard? So when there's an appeal of a summary judgment ruling, then the standard on review is de novo. Okay. This is an interlocutory appeal foró That's correct. That's a denial of a qualified immunity claim. Correct. And so the court would look at these facts and look at these applications of law de novo. And the issue on qualified immunity, again, it's kind ofó You're saying we should look at the facts de novo. I'm sorry. I'm sorry, Your Honor. You all right? I'm saying that you look at theóit's a point of law. And you look at the point of law de novo. And you take the facts as the district court found them. That's the standard. But when the area that gives rise to the concern for qualified immunity, the denial of qualified immunity, arises when there is a misapplication of the standard that gave rise to the denial, then there's a point of law there that's being contested as well as the denial of qualified immunity in that Officer Jennings' actions were reasonable. And when you look at the reasonableness, of course, you look at the Graham factors, the most prescient of which beingóor excuse me, the probative of which is factor 2, which talks about whether or not there was, in fact, a substantial risk of imminent harm to an officer or others. And under the facts that are presented, the totality of the circumstances, starting with the nature of the call and the efforts to resist complying with the officers, the three different interactions that Mr. Smith had with Mr. Jennings, including escalating behavior where he comes out first armed with a baseball bat, then armed withónot armed, but having his hands underneath his shirt to mimic a weapon and engaging with Mr. Jennings in that point, telling himó He as much as told him he had a weapon, didn't he? He as much as told him he had a weapon. And, in fact, he told Mr. Jennings thatóOfficer Jenningsóthat he could shoot him because he knew where he was in the yard based on the location with his flashlight. That's the last thing that Mr. Smith said to Mr. Jennings before he returned into a darked-out house and came back seconds later with a flashlight that he was holding in a position like this. Now, if you look at the positions from which the respective parties were viewing the scene, the Huffs were reviewing it from two different windows that were at different elevations, nearly two stories above Mr. Jennings. And if you compare the photographs, the screens that were taken from the plaintiff's brief showing that angle of that flashlight, it's nearly identical. And so one of the issues that we raise is that the court could have, as a matter of law, decided that the facts that the Huffs said were not something that could create a triable issue of fact under Anderson v. Russell because they have a different vantage point that's disadvantaged. They're two stories high, and they're looking down into a darked-out room, and Officer Jennings is in a different location looking up at Mr. Smith in the dark. So we argue, of course, that there's a – On your argument, you may well win the trial. But the question here is whether we've got jurisdiction. I understand that that's the question of the court, and I understand that the court's asking me to look specifically at qualified immunity. And I'm saying in order to get to qualified immunity, we have to first look at whether or not there was an error of law that gave rise to the inclusion of these facts. And that's where, I guess, the rubber meets the road in terms of the argument. If the court applied Scott v. Harris to disregard testimony that was clearly contradicted by the physical evidence on the scene, or if it applied Anderson v. Russell to determine that these witnesses were at a disadvantaged location and couldn't see the same scene that Officer Jennings could see, then in that case, those facts actually go away. Those facts go away. And then you're left with the facts that were presented that are, frankly, supported by the evidence on the scene that Officer Jennings testified to. These facts go away. You sound like those facts should be disregarded. Yes, Your Honor. In your view, the only facts should be what's your concept. No, Your Honor, not at all. What I'm saying is because the only thing that matters is if there's a genuine dispute of material fact. And so if there's not a genuine dispute because those other facts cannot be considered by the court. That's not what you say. You don't want them to be considered. That's what appears to me, and that's your point. They shouldn't even be considered. But only, Your Honor, to the extent that they conflict with the physical evidence on the scene that's uncontroverted. And so when you're looking at that issue. But Judge Urbanski ruled they had to be considered. Judge Urbanski did, and that's the error. I think the judge erred in finding that those facts could be considered under the summary judgment standard. So really that issue, that first issue, is whether or not Judge Urbanski misapplied the summary judgment standard. And looking at the issue of the flashlight, whether or not it was strobing. So whether or not it was strobing was not even a material fact. Judge Urbanski recognized that in an oral argument with counsel. So there were issues that came up in terms of the court's determination that there were facts in dispute. But those issues were based on points of law that we're asking the court to consider that this judge did not review correctly in making these determinations. Thank you. Thank you, Ms. Royer. You've got some rebuttal time, too. Mr. Ryan. May it please the court, good afternoon, Your Honors. We're here on an interlocutory appeal. Judge Rushing has hit the nail on the head, laid out the facts as stated by Judge Urbanski below, and asked counsel whether, if those facts are taken as true, a violation of clearly established law has been established. And counsel answered yes. That's the end of the story in this interlocutory appeal. This court has no jurisdiction to entertain this interlocutory appeal. Now, it may in the future, after trial, review a set of facts, but not today. My opponent has turned the standard of review on its head and argues, in essence, that in order to prevail, that you have to take the facts as presented by Officer Jennings as a matter of law, which is not the standard of review. And what she's presenting here is a jury argument, as you have noted, Judge King. Frankly, there's nothing more that I need to say, but I can march through Judge Urbanski's opinion. I'll be doing nothing but reiterating what you said, Judge Rushing, so please stop me at any time as you see fit. But that's this case in a nutshell. It really does not require anything else than what I have already said. Nevertheless, I will march, and we can argue over the facts, as you have noted, Judge King, but that's for another day. That's not for today. That's for a trial by jury. Well, there are two prongs in the analysis. There's the prong of whether there was a violation, and then there's the prong of whether there was a clearly established right. And I think the question of whether there was a violation certainly is a genuine issue of fact, and we have no jurisdiction to review. But what about the second question as to whether there was a clearly established right? Because that generally is a question of law. This court has addressed that a number of times in Aleman v. City of Charlotte, and I believe you authored that opinion, Judge King. And we've discussed all these cases on brief. Nibs v. Momfard, Cooper v. Sheehan, Hensley v. Price, and the Supreme Court case of Tennessee v. Garner, and 471 U.S. 1 in 1995 opinion, where the court said, in essence, a police officer may not seize an unarmed, non-combative suspect by shooting him dead. Excuse me, non-cooperative suspect by shooting him dead. So there's your violation of law, Judge Berner. So we can reach that issue. We can affirm that there was a clear – we can find that there was a clearly established right. You can find there's a clearly established right. Are you agreeing that that's being challenged? I thought I asked your friend on the other side whether it would be – whether they're arguing it's not a violation of clearly established law to shoot a man who's not presenting any of these facts that the district court said. And she said, no, we're not arguing that because it's so obvious that it is clearly established. So I thought she said that question's not before us. That question is not before you. Okay. I agree with you, Judge Rushing. That question is not before the court. They're not arguing it. She answered yes to your question. Right. That's the end of the story. Honestly, what else is there to – I have much more to say, but I see no point. I'll answer any questions the court may have. It's clear. Clearly, this court does not have jurisdiction. My opponent's trying to turn the standard of view on its head. That's where we are. Nothing further. I'll stand down. Thank you very much. You're welcome. Mr. Grimes, good to have you with us. Ms. Royer, you have some time. Thank you, Your Honor. And I want to pick up with respect to the right being clearly established in Judge Rushing's comments. When I answered the judge before in terms of whether or not somebody standing on the porch not engaging in any conduct could be shot by the police, of course, that is clearly established. You cannot do that. But I think that when we look at whether the right in question was clearly established, we have to consider all the other information that was before Officer Jennings, even if you take all of the facts the district court found them as they found them. We have to also consider the fact that at the time the officer was responding to a call for a domestic with a weapon, that the individual not contested facts. The individual had indicated that he was armed. He had already came out at the street level with a baseball bat. He had specifically told the police officer that he could shoot him if he wanted to. All of these things are not disputed. And, in fact, Mr. Huff, the neighbor next door, specifically said he found that to be a threat to the officer when he was examined by counsel. So when you're looking at whether or not there was an imminent threat to the safety or security of officers, I think that there is enough information in the record, even if you accept that these disputed facts are the way that Judge Urbanski set them out in the opinion, in terms of determining that the courts can apply. So where, can you show me where in your brief you argued if we accept all the facts as Judge Urbanski stated them, we still argue that there was not a violation of clearly established law? So, specifically on that point, I think that the argument comes in under whether or not the right was clearly established. I will admit that in analyzing it, I analyzed it in terms of whether or not the court identified the standard correctly, in terms of whether or not the right was one in which an individual had the right to stand on his porch. You disputed the assessment of facts. You said, we disagree with the district court's assessment of the facts that are relevant to this question. And if the district court had assessed the facts relevant to this question under the correct summary judgment standard, then we think there would not be a violation of clearly established law. Well, I think that I specifically said that I think the court stated the clearly established right incorrectly, based on the facts that were available to the officer at the time. And that includes all the facts, right? But I'd ask the court, even if you set aside the things that are disputed for the purpose of this argument, there are things that are not disputed that still give rise to a concern that there was an imminent threat to officer safety. And that's why when we're looking at it, of course, the question is whether or not that threat existed at the moment, the time that force was applied. But you have to look at all the information that was available to the officer on the scene. And that is certainly something that this court has said is necessary. And that's why when you look at the information that was available to the officer giving rise to the shooting, even if you'd say that he was standing still on the porch, but he still had that flashlight, it's not disputed that he had a flashlight and that it was on and it was pointed out into the yard, right, where Officer Jennings is located. Even if you take that fact, even if you take the fact that the record of the recording indicates that Officer Jennings asked him what that was attached to, the light that he had, what was it attached to, that Jennings, excuse me, Smith taunted Jennings and said, I don't know. You tell me. Am I pointing at you? When Jennings asked him if he was armed with a gun, he said, I don't know. You tell me. And so under the circumstances, Jennings did tell him to drop his weapon. He refused to drop his weapon. When you take all the information known to the officer at that point in time, that last exchange in and of itself would be sufficient. Even if the facts were such that Smith was standing on the porch flashing a flashlight at him, whether it was strobing or not, it was on and that is undisputed, and engaging in this conversation as to whether or not he had a gun and whether or not he was going to use it. Now, if you look at the precedent in this court, obviously having a gun in and of itself is not sufficient to determine there's imminent threat. There has to be some furtive action taken with it. When you take the actions of the decedent that are not disputed, the record from the recording, the conversation that they had, he was threatening and made every effort to make Officer Jennings believe he was, in fact, armed. That goes back to the second interaction on the porch where he was making finger guns under his shirt, not disputed. It goes back to the first interaction where he had a baseball bat, not disputed. So when you take all of that information and then in the moment where force is applied, you have an individual who refuses to state he's not armed, officers asking him if he's armed, asking if he has probable cause to shoot, telling him to shoot. Under those circumstances, when there is, in fact, an undisputed flashlight, I do believe that the fact is sufficient to grant qualified immunity on that issue with the undisputed facts. Thank you. Thank you, Ms. Royer. We'll come down and greet counsel, and then we'll adjourn the court for the day. Madam Clerk. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Robert B. King, Allison J. Rushing, Nicole G. Berner